**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN - 6 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

|                          |     |                                      |
|--------------------------|-----|--------------------------------------|
| THOMAS L. GLOVER,        | §   |                                      |
| Plaintiff,               | §   |                                      |
|                          | §   |                                      |
| v.                       | §   | Civil Action No. 3:04-CV-0917-M      |
|                          | §   |                                      |
| CITY OF DALLAS,          | §   |                                      |
| Defendant.               | §   |                                      |

### CITY'S SUMMARY JUDGMENT BRIEF

RESPECTFULLY SUBMITTED,

DALLAS CITY ATTORNEY'S OFFICE

JASON D. MCCLAIN
Assistant City Attorney
Texas State Bar No. 00797032
JANICE S. MOSS
Assistant City Attorney
Texas State Bar No. 14586050
City Hall, 7DN
1500 Marilla Street
Dallas, Texas 75201
(214)670-4226 - Telephone
(214)670-0622 - Telecopier

## TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ......................................................................................ii-iii

I.   Factual Background ..................................................................................1

II.  Summary Judgment Standard ...................................................................3

III. Glover's Claims ........................................................................................4

    A.   1997 promotional process claims ...................................................4

        1.   1997 promotional process claims not pled in
            Glover's Petition ...............................................................5

        2.   1997 promotional process claims not presented to EEOC .............5

        3.   1997 promotional process claims are not timely filed
            with EEOC ........................................................................6

    B.   Due Process claims .........................................................................7

        1.   Due process claims are not pled ........................................7

        2.   Due process claims are untimely .......................................8

    C.   1999 promotional process claims ...................................................8

        1.   Glover's race claims are not presented to the EEOC ......................9

        2.   Glover's allegations regarding the 1999 assessment center do
            not involve City employees. ..............................................9

        3.   Glover cannot show retaliation in his assessment center scores .....10

        4.   Glover cannot show discrimination in his assessment
            center scores ....................................................................14

    D.   Glover failed to mitigate his damages, if any. ...........................16

IV.  Conclusion ..............................................................................................17

    Certificate of Service ...........................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

*Abarca v. Metro. Transit Auth.*, 404 F.3d 938 (5th Cir.2005) ..................................14, 16

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) .......................................5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................3

*Arguello v. Conoco, Inc.*, 207 F.3d 803 (5th Cir. 2000) .....................................10

*Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570 (5th Cir. 2003) ............... 10-11

*Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642 (5th Cir. 1988)................................6

*Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) .....................12, 13, 14

*Fine v. GAF Chem. Corp.,* 995 F.2d 576 (5th Cir.1993) ......................................9

*Ford Motor Company v. EEOC,* 458 U.S. 219 (1982)
    *cert. denied,* 498 U.S. 987 (1990)................................................................16

*Hitt v. Connell*, 301 F.3d 240 (5th Cir.2002)....................................................8

*Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force,*
    379 F.3d 293 (5th Cir. 2004) ...................................................................8

*Kaplan v. City of Arlington*, 184 F.Supp.2d 553 (N.D. Tex. 2002)....................................7

*Lawrence v. University of Tx. Med. Branch at Galveston,*
    163 F.3d 309 (5th Cir. 1999) ...............................................................3-4

*Little v. Liquid Air. Corp.*, 37 F.3d 1069 (5th Cir.1994) .....................................4

*Long v. Eastfield Coll.*, 88 F.3d 300 (5th Cir.1996) ..........................................13

*Manning v. Chevron Chem. Co.*, 332 F.3d 874 (5th Cir.2003) ..........................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...........................4

*McMillan v. Rust College, Inc.*, 710 F.2d 1112 (5th Cir.1983) ..........................................12

*Monell v. New York City Dep't of Soc. Servcs.*, 436 U.S. 658 (1978)................................7

*Perez v. Region 20 Educ. Service Center*, 307 F.3d 318 (5th Cir.2002) ...........................13

*Randel v. United States Dep't of the Navy*, 157 F.3d 392 (5th Cir.1998) ...........................9

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ....................................12

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970) .....................................5, 6

*Sellers v. Delgado College*, 902 F.2d 1189 (5th Cir.) ........................................................16

*Wallace v. Texas Tech. Univ.*, 80 F.3d 1042 (5th Cir.1996) ...............................................4

*Waltham v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1989) ..................................................6

*Young v. City of Houston, Tex.*, 906 F.2d 177 (5th Cir.1990) ........................................5, 6

## STATUTES

42 U.S.C. §2000e-5(e)(1)........................................................................................................6

42 U.S.C. §1983 ...................................................................................................................7, 8

## RULES/REGULATIONS

Local Rule 56.5 .......................................................................................................................1

Fed.R.Civ.P 56(c) ..................................................................................................................3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS L. GLOVER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0917-M |
| | § | |
| CITY OF DALLAS, | § | |
| Defendant. | § | |

## CITY'S SUMMARY JUDGMENT BRIEF

The City files this brief pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Northern District of Texas Local Rule 56.5. The City respectfully presents the following:

## I.      Factual Background

Thomas Glover is a sergeant in the Dallas Police Department. (App. p. 1). In late 1998 and early 1999, Glover sought promotion from sergeant to the rank of lieutenant. (App. p. 1). At that time, sergeants seeking promotion to lieutenant first took a written examination. (App. p. 1). Those sergeants who passed the written examination then participated in an assessment center that consisted of three exercises over two days. (App. p. 1). The City hired an outside organization, Management Scientists II ("MS II"), to administer the assessment center in which Glover participated. (App. p. 1). The first day of the assessment center consisted of the In-Basket (IB) and Problem Analysis (PA) exercises. (App. p. 1). The former exercise scrutinized the candidate's ability to prioritize, delegate and confront different tasks. (App. p. 1). The latter exercise focused on the candidate's response to a variety of hypothetical situations. (App. p. 1). The second day of the assessment center was the Oral Resume (OR) exercise, which provided candidates with the opportunity to orally present their resumes and answer questions regarding their job performance. (App. p. 1-2). The IB and PA exercises were conducted by a four-

member panel of assessors selected and trained by MS II. (App. p. 2). The OR exercise was conducted by a different four-person panel of assessors, also selected and trained by MS II. (App. p. 2). Therefore, each candidate for promotion was assessed by a total of eight assessors. (App. p. 2). Each assessor held the rank of lieutenant or above with police departments from cities throughout the United States comparable in size to Dallas. (App. p. 2). After the candidates completed each exercise, the assessors individually rated their performance and then agreed on a consensus score using a scale from one to five to measure certain skills and abilities identified by MS II to be critical to the successful performance of a Dallas police lieutenant's job responsibilities. (App. p. 2). Specifically, MS II designed the IB and PA exercises to measure a candidate's: ability to relate to others; ability to analyze factual situations; adaptability; decisiveness; listening skills; judgment; organizational skills; and written communication skills. (App. p. 2). Similarly, MS II designed the OR exercise to measure a candidate's commitment to excellence; initiative; integrity; objectivity; oral presentation skills; perseverance; responsibility; and supervisory ability. (App. p. 2).

Scores from the written examination and the assessment center were then standardized and weighted. (App. p. 2). The final score was calculated from a combination of the written examination score and the assessment center score. (App. p. 2). Based on the combined final score of each candidate, a list ranking the candidates eligible for promotion of the highest scoring sergeant to the lowest was generated by MS II and certified by the City. (App. p. 2). Promotions were awarded to sergeants on the list starting from the highest scoring sergeant and proceeding downward as positions became available. (App. p. 2).

Glover scored an 83 on the written examination, which placed him fifth out of the 63 sergeants who passed the written examination. (App. p. 3). After Glover's score was

standardized, it was a 91.614 and counted 25% toward the final promotional score. (App. p. 3). The standardization of Glover's score did not affect his position relative to the other sergeants. Therefore, even after standardization, he was the fifth ranked sergeant. (App. p. 3). Glover's standardized assessment center score was 82.841, which counted 75% toward the final promotional score. (App. p. 3). MS II combined Glover's standardized written examination score and standardized assessment center score to arrive at a final promotional score of 85.035, which placed him at 29th out of the 60 sergeants who passed the written examination and completed the assessment center. (App. p. 3). This ranking was not high enough for Glover to be promoted to lieutenant. (App. p. 3). Glover contends that his assessment center score "cannot be rationally justified and resulted from discrimination and retaliation" in violation of Title VII. (App. p. 68, ¶ 10).

## II.   Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(c). A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is enough evidence for a reasonable jury to return a verdict for either party. *Id.*

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d

309 (5th Cir.1999). The moving party, however, is not required to negate the elements of the non-moving party's case. *Id.* at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996)(citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. *Id.*

## III.  Glover's Claims

At deposition, Glover stated that his lawsuit is made up of (1) Title VII race discrimination and retaliation claims in the 1997 promotional process from sergeant to lieutenant; (2) Title VII race discrimination and retaliation claims in the 1999 promotional process; and (3) a constitutional due process complaint.  (App. p. 16, Depo. p. 11:3-10). Glover's claims are either improper or unsupported and should be dismissed.

### A.  1997 promotional process claims

The 1997 promotional process for a Dallas police sergeant applying to be a lieutenant was similar to the 1999 process in that it was administered by MS II and required officers to pass a written examination and then participate in an assessment center. (App. p. 3).  Glover passed the written examination with a 78, which placed him at 13th out of 78 sergeants who passed the written examination. (App. p. 3).  Glover then participated in the assessment center, where he

was rated by eight assessors from outside the City of Dallas and who were different than the eight assessors who rated him during the 1999 process. (App. p. 3). After Glover's assessment center score and written examination score were standardized, weighted and combined, his final promotional score for the 1997 promotional process was 87.166, which placed him at 22nd out of the 74 sergeants who passed the written examination and completed the assessment center. (App. p. 3). Glover was not promoted to lieutenant. (App. p. 3). Glover contends that the failure to promote him during this promotional process was due to race discrimination and retaliation. (App. p. 15-16, Depo. p. 8:12-22 and Depo. p. 10:11-16).

### 1. 1997 promotional process claims not pled in Glover's Petition.

Glover did not present any allegations regarding the 1997 promotional process in his Original Complaint. (App. pp. 66-70). Glover admits that his Original Complaint does not allege that he was discriminated or retaliated against in the 1997 promotional process. (App. p. 16, Depo. p. 12:22-25). In fact, he concedes that the 1997 promotional process is not even "specifically mentioned" in his Original Complaint. (App. p. 16, Depo. p. 12: 8-12).

### 2. 1997 promotional process claims not presented to EEOC

Even if the court allowed Glover to amend his Petition and include claims involving the 1997 promotional process, he still could not pursue them under Title VII. Before bringing a claim in federal court under Title VII, a party must first file a charge of discrimination with the EEOC. *See Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir.1990). This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation and giving the employer some warning as to the conduct about which the employee is aggrieved. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). In the Fifth Circuit,

a Title VII action is limited in scope to the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Young*, 906 F.2d at 179 (citing *Sanchez*, 431 F.2d at 466). A complaint filed pursuant to Title VII may encompass any kind of discrimination "like or related to" allegations contained in the EEOC charge. *Sanchez*, 431 F.2d at 466. If an asserted claim is not "like or related to" an allegation contained in the EEOC charge, the court lacks subject matter jurisdiction over that claim. *Id.*

Glover filed his EEOC complaint on December 29, 1999. (App. p. 123 and p. 47, Depo. p. 135:1-25). In it, he complains only of the 1999 promotional process and does not refer in any way to the 1997 promotional process. (App. p. 123). Therefore, Glover's claims regarding the 1997 promotional process, to the extent they exist at all, should be dismissed because they were not presented to the EEOC and an investigation regarding the 1997 process could not reasonably be expected to grow out of Glover's EEOC complaint.

### 3. 1997 promotional process claims are not timely filed with EEOC

Even if an investigation of the 1997 promotional process could be expected to grow out of Glover's EEOC complaint, his Title VII claims regarding the 1997 process still should be dismissed because they were not timely presented to the EEOC. In deferral states such as Texas, an aggrieved party must file his EEOC charge within 300 days of the alleged unlawful practice. 42 U.S.C. §2000e-5(e)(1). The 300 day filing period is not jurisdictional, but rather more akin to and operates as a limitations period. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988). The period commences on the date the alleged unlawful practice occurred. *Waltham v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989).

Glover filed his initial complaint with the EEOC on December 29, 1999. (App. p. 123). Therefore, any events occurring before March 4, 1999, which is 300 days before the filing date,

should be barred. The 1997 promotional process for sergeants seeking promotion to lieutenant was completed well before March 4, 1999. Specifically, the final promotional list for the 1997 promotional process was posted on February 5, 1997. (App. p. 3-4, 169). The promotions off that list occurred on April 30, 1997. (App. p. 4). The 1997 promotional list expired on August 5, 1998. (App. p. 4). Therefore, Glover's Title VII claims regarding the 1997 process are untimely in any event and should be dismissed.

### B.    Due Process claims

At deposition, Glover alleges that he was denied due process in a number of ways over a number of years. (App. p. 22, Depo. pp. 34:14-36:15). Glover's due process claim derives from the United States Constitution. (App. pp. 18-19, Depo. pp. 20:19-21:1). Glover's due process allegations are not properly before this court and should be dismissed.

### 1.    Due process claims are not pled

Glover's Original Complaint does not mention due process nor does it state any elements of a due process claim. (App. p. 68, ¶ 10). Therefore, Glover has not pled a due process claim, and it should be dismissed.

Moreover, 42 U.S.C. §1983 is the sole statutory authority to enforce constitutional claims against a municipality. *See Kaplan v. City of Arlington*, 184 F.Supp.2d 553, 557 (N.D. Tex. 2002) *citing Monell v. New York City Dep't of Soc. Servcs.*, 436 U.S. 658 (1978). Glover does not even mention §1983 in his Original Complaint, much less properly plead such a cause of action against the City. Specifically, Glover does not plead (1) a constitutional violation; (2) the existence of a specific policy, practice, or custom; (3) that the identified policy, practice, or custom was the moving force behind the constitutional violation; (4) that the policy, practice, or custom was established by the final policymakers of the City or attributable to them; and (5) that

either the official policy constitutes a facial violation of the constitution or that the final policymakers exhibited deliberate indifference as to Glover's constitutional rights which were the subject of the constitutional violation. *Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309-11 (5th Cir. 2004). Since Glover does not plead these elements and cannot present evidence to establish them in any event, his due process claim, to the extent that he has one, should be dismissed.

### 2. Due process claims are untimely

Even if the court allowed Glover to amend his Petition and include due process claims pursuant to §1983, they still should be dismissed as untimely. The statute of limitations for a §1983 claim is two years. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir.2002). Glover filed his Original Complaint in this case on April 30, 2004. (App. p. 66). Therefore, his due process claim must be based on events occurring on or after April 30, 2002. Glover's due process claim, however, consists of events that occurred from 1989 to 2000. (App. p. 22, Depo. pp. 34:14-36:15). Even Glover's attorney admits that any §1983's claims are untimely. (App. p. 49, Depo. p. 144:14-23). Therefore, regardless of how Glover's due process claim is pled, it should be dismissed.

### C. 1999 promotional process claims

Glover alleges that he was discriminated and retaliated against during the 1999 assessment center when he received a score that placed him 29th on the list of sergeants eligible for promotion to lieutenant. (App. p. 68, ¶ 10). Glover claims that this allegedly discriminatory and retaliatory assessment center score prevented him from being promoted in violation of Title VII. (App. p. 68). These claims should be dismissed.

1.     **Glover's race claims are not presented to the EEOC**

Glover's EEOC complaint only alleges that he was retaliated against during the 1999 assessment center. (App. p. 123). Glover checked the retaliation box on his complaint but did not check the discrimination box. (App. p. 123). More importantly, he specifically limited his complaint to retaliation in his discrimination statement:

> I believe I was discriminated against in retaliation for my past and current objections to discriminatory treatment of employees and my past and current involvement in [EEOC] and [DOJ] investigations.

(App. p. 123). Nowhere in his EEOC complaint does Glover allege or even imply that he is presenting a race discrimination claim. *See Randel v. United States Dep't of the Navy,* 157 F.3d 392, 395 (5th Cir.1998) ("[Plaintiff's] racial discrimination claim is separate and distinct from his reprisal claim, and accordingly, he must exhaust his administrative remedies on that claim before seeking review in federal court.").

Because Glover's EEOC charge does not allege race discrimination and an investigation of alleged racial discrimination could not reasonably be expected to grow from it, Glover's Title VII race discrimination claim as it relates to the 1999 promotional process should be dismissed. *See Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993)(the scope of a Title VII suit may extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge).

2.     **Glover's allegations regarding the 1999 assessment center do not involve City employees.**

Glover's Original Complaint alleges that he was retaliated and discriminated against when his assessment center scores dropped him to 29th on the promotional list. (App. p. 68). David Wagner, president of MSII, was the assessment center administrator. (App. p. 4-6). Glover acknowledges that his claims focus on Wagner:

What happened to me was directly related to David Wagner and the problems he had with me challenging him. David Wagner as an assessment center administrator – it's a known fact across this country, you can ask anybody. An assessment administrator runs the assessment process.

(App. p. 56, Depo. p. 170:7-12).

Therefore, in order for Glover to establish liability for the City, he must show that Wagner is a City employee or agent. *Arguello v. Conoco, Inc.*[1], 207 F.3d 803, 807 (5th Cir. 2000). Wagner is not a City employee or agent. (App. p. 4). In fact, the contract the City signed with Wagner to administer the 1999 assessment center specifically states that the relationship between Wagner and the City "is that of an independent contractor" and that "no term or provision of the contract shall be construed as making [Wagner] the agent, servant or employee of the City". (App. p. 6). Glover admits that this contract is the best way to determine Wagner's employment relationship with the City and that Wagner was not a City employee. (App. p. 46, Depo. p. 129:12-15). Likewise, the assessors who rated Glover during the assessment center are not City employees or agents. (App. p. 38, Depo. p. 99:8-13). If Glover cannot show that his allegedly unlawful drop in position on a promotional list was perpetrated by City employees or agents, then he cannot establish City liability under Title VII, and his claims against it should be dismissed.

3.      **Glover cannot show retaliation in his assessment center scores.**

To proceed with a retaliation claim, Glover must first establish a *prima facie* case, which requires that he show: (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.

---

[1] *Arguello* is a §1981 case, but Title VII and §1981 cases use the same analysis. *See Lawrence v. University of Tx. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

2003). Glover cannot show a causal connection between his assessment center score and his protected activities.

Glover was rated in the assessment center by Kim Lemaux, a lieutenant in the Arlington Police Department (App. p. 189); Beverly Noble Barnes, a Captain in the St. Louis Police Department (App. p. 175); Dan Sustaire, a Deputy Chief in the Arlington Police Department (App. p. 177); Sam Holt, a lieutenant in the Austin Police Department (App. p. 179); Shirley Britton, a Captain in the Atlanta Police Department (App. p. 181); Barry Powell, a major in the Baltimore Police Department (App. p. 183); J.D. Brewer, a captain in the Corpus Christi Police Department (App. p. 185); and Sharon Pollman, a captain in the Oklahoma City Police Department (App. p. 187). Noble Barnes, Holt, Britton and Powell are black. (App. p. 3).

Glover's evidence regarding a causal connection between his protected activities and his assessment center scores is rife with speculation and supposition. He admits that he does not have anything other than his "feelings" to show that the eight outside assessors discussed his protected activities before they rated him in the assessment center. (App. p. 39, Depo. p. 103:14-22). And even his "feelings" were directed at one particular assessor:

> Q: Do you think that Wagner influenced the way these eight assessors scored you during your assessment center?
>
> A: I have some strong feelings that Mr. Brewer may have been one that was influenced or that I was discussed or talked about.
>
> Q: Okay. Do you have any evidence to support that they discussed you before the assessment center?
>
> A: I have the results, not the evidence before.

(App. p. 40, Depo. p. 105:2-10). Glover's specific concern is that Brewer scored Glover lower than the other three assessors in a particular portion of an exercise. (App. p. 42, Depo., pp. 113:11-114:14). Even so, Glover admits that he does not have any actual knowledge or evidence

of any assessor scoring Glover lower because of his protected activities. (App. p. 41-42, Depo pp. 112:25-113:7 and p. 114:15-21). Glover's subjective belief, no matter how heartfelt, that he was discriminated or retaliated against is not sufficient to sustain his case. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

In any event, none of the outside assessors who rated Glover during the assessment center, including Brewer, had any previous knowledge of Glover, including knowledge of his protected activities. (App. pp. 175-190). None of the scores given to Glover by any of the outside assessors were in any way improperly influenced by Glover's protected activities or by Wagner, City employees or the other assessors. (App. pp. 175-190). Finally, the scores each outside assessor gave Glover, including the consensus scores each outside assessor agreed to, were based solely on information presented through the assessment center and Glover's performance during the particular exercise. (App. pp. 175-190). Glover simply cannot show that these assessors even knew of him and his protected activities, much less show a causal connection between the assessment center scores given to him from officers from across the United States and his protected activities. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n. 6 (5th Cir.2003)("Although the plaintiff's burden at the *prima facie* state is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity."). Therefore, Glover's retaliation claims should be dismissed.

If Glover establishes a *prima facie* case, then the City must produce a legitimate nondiscriminatory reason for Glover's assessment center scores. *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983). The City's burden is one of production rather than persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Each of the outside assessors who rated Glover affirmatively state that the scores he or she gave Glover, and

every other sergeant they assessed, were based solely on the particular sergeant's performance during the assessment center exercises. (App. p. 175-190).

After the City produces a legitimate, nondiscriminatory reason for Glover's assessment center scores, Glover must then show that "but for" his protected activities, he would not have received the assessment center scores that he did. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir.1996)("[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision."). This burden requires more than demonstrating that poor decisions were made; the question is not whether the City made an erroneous decision, rather, it is whether the decision was made with an unlawful animus. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318 (5th Cir.2002). Glover fails to meet this standard. He admits that he does not have any knowledge of his assessors rating him differently based on his protected activities:

> Q: Which of those eight (assessors), if any, do you think said "Well, this guy might have earned a 4, but with all the complaining he's done, you know, were going to make it a 3"?
>
> A: I don't have any knowledge of any of them saying that.
>
> Q: Well, even doing that.
>
> A: No, sir, I have no knowledge of that.

(App. pp. 41-42, Depo. pp. 112:25-113:7). In fact, his only "evidence" that he was retaliated against during the assessment center scoring is his incredulity over a score Brewer gave him in a particular dimension, a score that the other assessors agreed to as a consensus score for that dimension. (App. p. 41, Depo. pp. 109:18-110:4 and App. p. 42, Depo. pp. 113:11-114:14). Glover's subjective beliefs do not constitute competent summary judgment evidence. *See Byers*, 209 F.3d at 427. Therefore, his retaliation claims should be dismissed.

**4.      Glover cannot show discrimination in his assessment center scores.**

Even if Glover's discrimination claim had been presented to the EEOC, it still should be dismissed. To proceed with a discrimination claim, Glover must first establish a *prima facie* case, which requires that he show: (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected group were treated more favorably than he. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005). Glover cannot show that he was treated differently than officers outside of his protected class.

Glover's specific race discrimination allegations are that Brewer rated him too harshly on a particular exercise and that Lemaux took poor notes while evaluating him. (App. p. 41, Depo. 110:5-14). Glover does not allege that any of the other six assessors rated him lower because of his race. (App. p. 41, Depo. p. 109:7-11). Glover does not show how his allegations against Brewer or Lemaux support his race discrimination claim because he does not show that either outside assessor treated him differently than they treated other non-black sergeants.

Glover does not know if Brewer rated other non-black sergeants easier then he did Glover because Glover admits that he did not observe any other sergeants perform their assessment center exercises, including those rated by Brewer. (App. p. 44, Depo. p. 124: 12-15 and App. p. 45, Depo. p. 125:6-9). If Glover cannot show that Brewer rated him differently than other non-black officers, then he cannot show his *prima facie* case.

Moreover, all of the assessors scoring a particular exercise agree to a consensus score. (App. p. 2). The score Brewer gave to Glover and that Glover complains of was agreed to by the other three assessors as the consensus score for Glover's performance on that particular dimension. (App. p. 42, Depo. pp. 113:11-114:14). Half of Glover's assessors for each

assessment center exercise were black. (App. p. 3). Glover offers nothing to show why high ranking black police officers from other police departments would agree to score Glover poorly because of his race.

Moreover, it is important to note that some white participants in the assessment center also suffered similar drops in their final rankings after their assessment center performance. Specifically, Eric Webb, a white male, was ranked first after written examination, but fell to 24th on the promotional list after the assessment center and was not promoted off the promotional list. (App. p. 42, Depo. p. 116:17-25 and App. p. 43, Depo. p. 120:14-25). Rupert Emison, a white male, was ranked fifth after the written examination, but fell to 45th on the promotional list after the assessment center and was not promoted off the promotional list. (App. p. 43, Depo. p. 118:22-25). Drayson Robertson, a white male, was ranked 13th after the written examination, but fell to 33rd on the promotional list after the assessment center and was not promoted off the promotional list. (App. p. 4).

Conversely, some black officers enjoyed an improvement in their position on the promotional list. Specifically, David Brown, a black male, was ranked 37th after the written examination, but rose to fourth on the promotional list after the assessment center and was promoted off the promotional list. (App. p. 44, Depo. pp. 123:23-124: 5). Likewise, Anthony Williams, a black male, was ranked 59th after the written examination, but rose to third on the promotional list after the assessment center and was promoted off the promotional list. (App. p. 44, Depo. p. 121:21-122:7). In fact, Glover is simply dismissive of Williams' success:

> Q: Do you have any explanation for this (allegedly discriminatory) process promoting Anthony Williams, a black officer?
>
> A: It does not mean that I did not get discriminated on, and that's all I'll say.

(App. p. 44, Depo. p. 123:16-19).

Likewise, Glover does not offer any information to show that Lemaux took more copious or better notes while rating non-black sergeants' assessment center exercises. Without such a showing, this portion of his discrimination claim also does not meet his *prima facie* case.

But even if Glover does establish a *prima facie* case, the City can produce a legitimate nondiscriminatory reason for Glover's assessment center scores – the outside assessors' statements that Glover's scores were based on his performance during the assessment center exercises. (App. pp. 175-190). *See Abarca*, 404 F.3d at 941 (If Plaintiff establishes a *prima facie* case, the burden then shifts to Defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action).

Thereafter, it is Glover's burden to show that the City's legitimate non-discriminatory reason was a pretext for discrimination. *Id.* As the City presented above when addressing Glover's *prima facie* case, Glover simply does not have any evidence to show that the scores he received in the assessment center were a pretext for race discrimination. And, of course, Glover offers nothing to refute the specific assertion from each outside assessor, including Brewer and Lemaux, that the scores they gave Glover during the assessment center were based solely on his performance during the assessment center exercises. (App. pp. 175-190).

Since Glover cannot demonstrate that the scores he received during the assessment center were pretexts for discrimination because of his race, his Title VII race claims, to the extent they ever existed, should be denied.

**D.      Glover failed to mitigate his damages, if any.**

When seeking to recover damages in an employment discrimination case, the plaintiff is under a duty to mitigate. *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.)(quoting *Ford Motor Company v. EEOC*, 458 U.S. 219, 231 n. 15 (1982) (this duty arises from "an

ancient principle of law ... [that] where one person has committed a ... legal wrong against another it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages")), *cert. denied,* 498 U.S. 987 (1990). Glover did not mitigate his damages because he refused to participate in the 2001 promotional process for Dallas police sergeants seeking promotion to lieutenant:

> Q: Why didn't you take the 2001 promotional test?
>
> A: You know that's a really good question. I really don't know. I guess I foolishly thought that the case may be settled. I don't know. ... It wasn't the correct decision. I probably should have taken it.

(App. p. 52, Depo. p. 156:15-22). What makes Glover's inaction that much more egregious is that the 2001 promotional process was not run by MS II or David Wagner, and the City employees who Glover alleges violated his due process rights were no longer with the City at the time of the 2001 promotional process. (App. p. 52, Depo. p. 156:4-14). Finally, Glover admits that he likely would have been promoted had he participated in the 2001 promotional process:

> Q: Do you think it is fair to say that you would have been promoted in the first wave had you taken it in 2001?
>
> A: If you ask me, I think I would. I would perform well. I believe in my abilities, like I said, because of preparation. So, you know, I don't know.

(App. p. 53, Depo. p. 158:2-7). Promotions from the 2001 promotional list began on June 26, 2002. (App. p. 3). Therefore, Glover's damages, if any, should cease as of June 26, 2002 due to his failure to mitigate his damages by participating in the subsequent promotional process.

## IV.   Conclusion

Glover's discrimination and retaliation claims related to the 1997 process should be dismissed because they were not pled in this lawsuit, nor were they presented to the EEOC. His due process claims should be dismissed because they were not pled nor are they timely. His

discrimination claim related to the 1999 promotional process should be dismissed because it was not presented to the EEOC and, in any event, he cannot establish a *prima facie* case or show that his assessment center scores were a pretext for race discrimination. Glover's retaliation claim should be dismissed because he cannot establish a *prima facie* case nor can he show that but for his protected activities, he would not have received the assessment center scores that he did. Therefore, the City respectfully requests that the court grant its motion for summary judgment and dismiss Glover's claims in their entirety. In the alternative, if the court does not dismiss Glover's claims, then the City respectfully requests that it limits Glover's alleged damages to amounts accrued before June 26, 2002 due to Glover's failure to mitigate.

RESPECTFULLY SUBMITTED,

DALLAS CITY ATTORNEY'S OFFICE

JASON D. MCCLAIN
Assistant City Attorney
Texas State Bar No. 00797032
JANICE S. MOSS
Assistant City Attorney
Texas State Bar No. 14586050
City Hall, 7DN
1500 Marilla Street
Dallas, Texas 75201
(214)670-4226 - Telephone
(214)670-0622 - Telecopier

## CERTIFICATE OF SERVICE

On January 6 , 2006, a copy of this brief was provided to Glover's counsel of record:

Doug Larson
Law Office of Doug Larson
410 West Main Street, Suite 101
Mesquite, Texas 75149

JASON D. MCCLAIN

City's Summary Judgment Brief

Page 18