

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS L. GLOVER, <br> Plaintiffs | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. <br> 3-04CV-0917M |
| THE CITY OF DALLAS, <br> Defendant | § <br> § <br> § | |

### PLAINTIFF'S RESPONSE AND BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE UNITED STATES DISTRICT JUDGE:

COME NOW, THOMAS LEE GLOVER, Plaintiff in the above styled and numbered cause and hereby files this, his Response and Brief In Support of Response To Defendant's Motion For Summary Judgment, and in support of the same would show the Court the following:

A.  Factual Background Summary

The Plaintiff is Thomas Lee Glover. Glover is a 24 year veteran of the Dallas Police Department. Glover holds the rank of Sergeant. Glover is Black or African-American. (App. pp. 1-2)

The dispute in this case is focused on the 1999 civil service exam wherein several police officers holding the rank of Sergeant sought to be promoted to the rank of Lieutenant through a civil service exam process. The 1999 civil service examination was divided into two separate parts. The first part was an objective written examination. The second part was subjective and consisted of subjective examinations of the applicants was supervised and conducted by a consultant hired by the City of Dallas named David Wagner. The Plaintiff scored high enough to be ranked fifth overall on

the written part of the examination process. According to Wagner's subjective evaluation process, the plaintiff was reduced from fifth to twenty-ninth on the list of eligible applicants. The positioning of twenty-ninth rank prevented the plaintiff from being chosen as a Lieutenant and instead, a white female was selected. (App. pp. generally 1-59; 108-112)

The City's reliance on the Plaintiff's inability to challenge the numerical scoring that caused the Plaintiff to be reduced from fifth to twenty-ninth place and the City's reliance on Wagner's subjective selection process is misplaced. The fairness and objectivity of the subjective part of the exam administered by Wagner has not been established by the City's evidentiary presentation nor has this been conceded by the Plaintiff. The City's designated representative (Civil Service Director Marsolais) by deposition admits that the City cannot rule out that either race or retaliation did not play a role in the 1999 Lieutenant selection process. (App. pp. 174-184; deposition pages 22 - 38)

Because Wagner is not a City employee, there is nobody in the City of Dallas, the Civil Service Department or Police Department that can testify to the authenticity and/or the correctness of the documents related to Wagner's assessment process. Nor has evidence been presented regarding authenticity been submitted. No testimony has been offered by the City as to how the persons acting as assessors were selected to score anyone nor is there testimony assuring the court or the Plaintiff that the assessors were not selected in a manner that permitted retaliation or discrimination to occur. There is no testimony demonstrating that the assessment results are either true or correct. The City has supplied some documents related to the 1999 assessment process, but this doesn't mean that the testing was legitimate or free from discrimination or retaliation. The Plaintiff objects to hearsay grounds and FRE 601 that the assessment documents supplied by the City represent a true and correct effort at achieving fair results devoid of discrimination or retaliation.

Numerous facts and circumstances strongly indicate that the 1999 Police Department Lieutenant selection process was not fairly conducted and that the selection process was subjected to manipulation. The evidence presented by the Plaintiff establishes that both the City's consultant, Wagner, and several members of the Dallas Police Departments Command Staff were openly hostile to the Plaintiff and had a motive to discriminate and/or retaliate against him. These matters include the following:

### A.     The Plaintiff has superior qualifications for the promotion to Lieutenant.

For over fifteen years, in addition to his regular duties as the Sergeant in the Family Violence Unit, Glover has served as an Adjunct Academy Instructor responsible for teaching recruits problem solving and critical thinking; understanding the African-American Community; diversity and racial profiling. Glover has also been selected by his Division Commander as the Ethics Instructor for all members of the General Investigation Division. In recent times, Glover was selected to co-supervise an entire shift during the World Cup Soccer Details, which was a highly sensitive assignment that called for expertise in several areas of police supervision. Glover's internal affairs records both at the time of his 1999 attempt at promotion to the rank of Lieutenant and at the present time are without internal or external official complaint of police misconduct coming from either a citizen and/or a supervisor. (App. pp. 46-47)

Glover has authored training bulletins for the police department on the laws pertaining to weapons and arrests. Glover was the developer and facilitator of several highly praised programs concerning the following: Prevention of Family Violence Among the Elderly; Prevention of Family Violence in Public Housing; Prevention of Family Violence Among Pregnant Teens; and Prevention of Family Violence Among Apartment Dwellers. (App. pp. 47-48)

Glover has attended advanced management skill courses offered by the International Association of Chiefs of Police, management workshops, as well as a number of supervision and management schools through his career. (App. p. 48)

Glover is a graduate of the Southwestern Law Enforcement Institute of Police Supervision. Glover has been or is currently a member o the Police Department's Emergency Relief Fund Board, the Domestic Violence Task Force, the Elder Abuse Task Force, the Big Brother Recruit Program, Volunteer YMCA Basketball Coach, the Dallas School District Laureate, World Police Programs, Vocational Industrial Clubs of America, the Dallas Advocacy Volunteer, Violent Defenders Task Force, Promotional Interview Board, and a number of other initiatives. Glover has written extensively and has been published on four occasions in a national magazine regarding matters of police recruitment and issues related to blacks in law enforcement. (App. pp. 48)

During Glover's tenure in supervising the Dallas Police Department's Recruiting Unit, the units in which Glover participated were responsible for setting a record recruitment and hiring efforts. (App. pp. 48-49)

### B. Glover has successfully taught others on how to succeed in the assessment process.

Since 1990, Glover has read, studied, and practiced assessment center methodology and has provided free training to police department employees who desired to receive promotions. A number of individuals, including Executive Assistant Chief, David Brown, former Lieutenant and current Assistant Director of Code Enforcement, Cherita Johnson, and a number of Lieutenants and Sergeants in the Police Department have succeeded in obtaining advancement after attended training sessions given by Glover. Glover has been prominently mentioned for at least a dozen years as an

individual in the Police Department that one should seek out for preparation in the promotional process. (App. pp. 49-50)

### C. Glover's participation in civil rights activities has drawn the ire of his superiors as well as Wagner. These acts constitute discrimination and/or retaliation.

For several years, Glover has been a member of the Texas Peace Officer's Association ("T.P.O.A."). The T.P.O.A. is a labor organization that is comprised of mostly African-Americans who are police officers in several Dallas County Police Departments including the Dallas Police Department. From January 1994 through December 1997, Glover was the First Vice-President of the T.P.O.A. From January to December 2003, Glover served as the President of the T.P.O.A. As a member and a leader of the T.P.O.A., Glover represented several minority officers in employment disputes with management and participated in civil rights protest demonstrations and gave radio and television interviews critical of the racial mistreatment at the Dallas Police Department. (App. pp. 78-107) Glover's affidavit cites several examples where Glover and other T.P.O.A. officers failed to achieve advancement in rank and favorable working conditions and suffered retaliation as a result of their activities generally. (App. pp. 1-59; 42-44; 52-54)

After Glover testified in 1992 against Wagner in a lawsuit concerning Wagner's assessment procedures, a State District Judge ruled that Wagner's assessment procedures were discriminatory. Subsequent to this, Wagner became openly hostile towards Glover. See examples on pp. 10-12 and 26-27, 78 of the Appendix.

In 1999, Glover assembled records and statistics that demonstrated that minority officers received greater discipline when compared with their white counterparts. These matters were not well received by the Police Department. Former Police Chief, Ben Click, angrily refused to discuss

the question of disparate discipline with Glover. (App. pp. 12-14; 15-17) Additionally, members of Click's Command Staff angrily refused to deal with Glover. (App. pp. 33-34; 36-40) Glover's Supervisor in the Personnel Division, Deputy Chief Hawkins, retaliated against a T.P.O.A. Vice-President, Lee Bush, by causing an internal investigation claiming that Bush's complaints of racism were false. Hawkins also berated Glover for the claims of racism. (App. pp. 17-19) Unlike other officers who visited the Personnel Division, Hawkins refused to speak with Glover unless he signed a log documenting the date and time that Glover came into the Personnel Division to speak with him. (App. pp. 35-36; 58-59)

>    D.   **Glover's attempted but mostly unsuccessful use of the Police Department's internal grievance procedures indicates intentional retaliation and discrimination by the City of Dallas and Wagner.**

After Glover failed to achieve promotion to Lieutenant in 1997, Glover, by use of the City's internal grievance procedures, attempted to focus attention on the 1997 Lieutenant assessment process conducted by David Wagner. Instead of achieving a hearing, that should have occurred before another Civil Service Lieutenant process in 1999, someone in the Administrative Offices of the Police Department either failed to send the grievance to the Civil Service Office or the former Civil Service Director, David Truly, received the grievance but failed to acknowledge that the plaintiff had sought a hearing. In the grievance, Plaintiff contended that the 1997 Lieutenant assessment process discriminated against black Lieutenant applicants. The Plaintiff received a certified letter from a Dallas Deputy Chief indicating that the grievance was valid and was ripe for scheduling. The Civil Service Department never scheduled the grievance hearing claiming that the Department never received the grievance. In spite of Glover's receipt of the certified letter advising him that his grievance was valid, neither the Police Administration nor the Civil Service Department

would take actions to see that Glover's grievance was to be scheduled. (App. pp. 19-21; 39-43) Glover never achieved a Civil Service Hearing before the Civil Service Board.

### E. The Civil Service Board acknowledged that Glover was subjected to retaliation in the 1999 civil service exam.

Shortly after Glover's grievance concerning the 1997 Lieutenant who failed to achieve a hearing, Glover took the 1999 Lieutenant exam. In this process, Glover was reduced from being ranked fifth on the written exam to twenty-ninth by the assessment process. This time Glover filed another grievance and this time he achieved a grievance hearing before the City's Civil Service Board. This time the Civil Service Board on May 2, 2000 convened a hearing and ruled that the assessment process was improperly administered by David Wagner and that Glover had been subjected to retaliation. However, the Civil Service Board, instead of taking actions to correct or alleviate the retaliation against Glover, ruled that it was powerless to take actions to correct acts of retaliation. This discussion was motivated by a City Attorney's ruling that the Civil Service Board lacked the power to correct retaliation. (App. pp. 22; 29-30; 113-136)

### F. The City of Dallas has conveniently lost vital documents related to Glover's claim and/or failed to produce vital information to the E.E.O.C and/or to the Department of Justice concerning Glover's complaint of retaliation/discrimination.

The Civil Service Board has evidently lost or has refused to produce the May 2000 hearing transcript. Additionally, the City refused to produce Wagner's assessment materials to the E.E.O.C. during its investigation. (App. pp. 30-32; 137-167) The City has admitted that it cannot produce evidence that Wagner's 1999 assessment was accomplished without elements of racism or retaliation (App. pp. 174-185)

### G. Former Dallas Police Chief Terrell Bolton admitted to Glover that the City had

**discriminated against him in the 1999 Lieutenant promotion process.**

Bolton admitted to Glover that he had been unfairly treated in the 1999 exam but failed to take actions to correct the discrimination. Bolton also conceded that T.P.O.A. officers had been unfairly treated by previous Chiefs. Ironically, Bolton promoted four white Sergeants to Lieutenant who had been on a promotional list of Lieutenant applicants for 8-10 years earlier even though none of them had taken legal actions to complain or preserve their claims of mistreatment. (App. pp. 44-46) Bolton also admitted that T.P.O.A. officer Bush had been subjected to discrimination. (App. pp. 46-47; 56-57)

B.  Summary Judgment Standards

Summary Judgment is appropriate when the Court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986); Russ v. Int'l Paper Co., 943 F.2d 589, 590 (5th Cir. 1991). When reviewing the pleadings, depositions, admissions, answers to interrogatories, and affidavits, the Court must draw all reasonable inferences in favor of the non-moving party. Russ, at 590; Randolph v. Laeisz, 896 F.2d 964, 969 (5th Cir. 1990). Indeed, as long as there appears to be some evidentiary support for disputed allegations, the motion must be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Coke v. General Adjustments Bureau, 640 F.2d 584, 595 (5th Cir. 1981 (en banc)).

As the summary judgment movant, the City of Dallas has the burden of showing the absence of a genuine issue of material fact. Hanchey v. Energas Co., 925 F.2d 96, 97 (5th Cir. 1990). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. (quoting Bienkowski v. American Airlines, 851 F.2d 1503,

1504 (5th Cir. 1988)). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. Gremillion v. Gulf Coast Catering Co., 904 F.2d 290, 292 (5th Cir. 1990). Because the Defendant seeks to justify that the claim that its employment decisions were not based on race, the City bears the burden of establishing that there is no evidence showing that the Plaintiff was subjected to discrimination or retaliation based on his race, African-American (Black).

In resolving a motion for summary judgment, a court may not evaluate the credibility of witnesses, resolve factual disputes, or weigh the evidence. Anderson, 477 U.S. 242, 255. In addition, if the evidence in the record establishes that a reasonable jury, resolving all inferences in favor of the non-movant, could return a verdict in that party's favor, the motion must be denied. Id.

As a matter of law, there are contested issues of fact which should preclude this Court from granting a summary judgment for the City of Dallas. The Plaintiff has presented compelling evidence of facial discrimination and retaliation.

The Plaintiff's evidence substantiates a claim of race discrimination and/or retaliation. The equal protection clause of the Fourteenth Amendment, as well as Title VII, prohibits discriminatory employment actions taken by local government based upon a person's race. To prove a violation, the Plaintiff must prove that an act or acts were undertaken against him for a racially discriminatory purpose. Larry v. White, 929 F.2d 206 at 209 (5th Cir. 1991) (citing Washington v. Davis, 426 U.S. 229 (1976)); Johnson v. Rodriguez, 110 F.2d 299 at 306 (5th Cir. 1997). "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." Johnson, 110 F.3d at 307 (quoting Woods v. Edwards, 51 F.3d 577 at 580 (5th

Cir. 1995)).

This discriminatory intent can be proven by direct or circumstantial evidence of racial bias. Wallace v. Texas Tech University, 80 F.3d 1042 at 1047 (5th Cir. 1996); Kendall v. Block, 821 F.2d 1142 at 1145 (5th Cir. 1987). Additionally, the Plaintiff can satisfy his circumstantial case of race discrimination by establishing the elements of a prima facie case utilized in Title VII litigation. Wallace, 80 F.3d at 1047; Cervantez v. Bexar County Civil Service Commission, 99 F.3d 730 at 734 (5th Cir. 1996). ("We have on numerous occasions recognized that Section 1983 and Title VII are parallel causes of action."), Merwine v. Board of Trustees for State Institutions of Higher Learning, 754 F.2d 631 at 635, n.3 (5th Cir. 1985) ("When a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes. [citation omitted] Accordingly, this circuit has held that the standards . . . for establishing a prima facie case in a Title VII employment discrimination action present a logical and appealing application . . . § 1983 cases."); Southard v. Texas Board of Criminal Justice, 114 F.3d 539 at 554 (5th Cir. 1996).

Under Title VII disparate treatment involves treating individuals differently on the basis of race. A disparate treatment case is focused on the employer's discriminatory motive. If the Plaintiff proves intentional bias, a defendant must assert a legitimate nondiscriminatory reason for the employment decision. The Supreme Court's conceptual framework for the order and allocation of proof was set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny Furnco Constr. Corp. v. Waters, 438 U.S. 567 (1978); Board of Trs. v. Sweeney, 439 U.S. 24 (1978); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983). The disparate treatment principles are often referred to

as the McDonnell-Burdine standard because the Burdine articulation of the order and allocation of proof is a more precise explanation of the basis test first set out in McDonnell Douglas. The tripartite standard for establishing whether there exists different treatment based on the Plaintiff's race, Black or African-American, is as follows:

> (1) the Plaintiff must establish a prima facie case;
>
> (2) the Defendant must "articulate some legitimate, nondiscriminatory reason", 411 U.S. at 802, for the employment action; and
>
> (3) the Plaintiff must then prove that the Defendant's reason was a mere pretext for discrimination.

The McDonnell-Douglas tripartite formula is often not trifurcated. Rather the trier of fact considers all three steps simultaneously: the Plaintiff presents the prima facie case and anticipates the Defendant's reasons for the action. Thus, at this stage the Plaintiff's burden of showing pretext "merges with the ultimate burden of persuading the court that the Plaintiff has been the victim of intentional discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Recently, the Supreme Court had the opportunity to give guidance on how evidence should be evaluated when an employer claims that its decisions were non-discriminatory and justified and the Plaintiff responds that the employer's claims are pretextual. This occurred in Reeves v. Sanderson Plumbing Products, 120 S.Ct. 2097 at 2106 (2000), the Supreme Court acknowledged that the previously established criteria remain the factors governing the determination of a discrimination claim:

> McDonnell Douglas and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." St. Mary's Honor Center v. Hicks, 509 U.S. 502,

> 506 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, the plaintiff must establish a prima facie case of discrimination. Ibid., Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). It is undisputed that petitioner satisfied this burden here: (I) at the time he was fired, he was a member of the class protected by the A.D.E.A. ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)), (ii) he was otherwise qualified for the position of Hinge Room supervisor, (iii) he was discharged by respondent, and (iv) respondent successfully hired three persons in their thirties to fill petitioner's position.

The Plaintiff's evidence meets the required *prima facie* criteria. The Plaintiff is a member of the protected class. His is Black or African-American in a police department of primarily White persons. The evidence presented by the Plaintiff demonstrates evidence of his disparate treatment because of his race.

The Court of Appeals for the Fifth Circuit drew criticism from the Supreme Court in Reeves v. Sanderson Plumbing Products, Inc., supra, for discounting potentially damning evidence against the employer's position on the grounds that the actions and/or statements were not made in the "direct context" of a potentially discriminatory decision. By failing to draw all reasonable inferences in favor of the non-movant, the Supreme Court said the court of appeals had misapplied the law relating to the determination of cases involving discrimination and the Rule 50 standard of review. Important to the case at hand, a Rule 50 standard of review, in most respects, mirrors the summary judgment evaluation of the evidence. (See Reeves, 120 S.Ct. 15 2109-2110 and Rule 56.)

The Supreme Court's opinion in Reeves, supra, forced a change in the Fifth Circuit approach to discrimination matters. See Evans v. City of Bishop, 238 F.3d 586 (5th Cir. 2000). In the Evans case, an African-American male over 60 years old, sued the City of Bishop for race, color, sex and age discrimination when he was passed over for an administrative assistant job in favor of an Hispanic woman (Villareal) under forty years of age. The District Court ruled that, although Evans

PLAINTIFF'S RESPONSE AND BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                              PAGE 12

had established a prima facie case and some evidence of pretext, he failed to create a fact question about Bishop's discriminatory animus, and awarded summary judgment to the City of Bishop. In an unpublished opinion issued a month prior to Reeves, the Fifth Circuit had affirmed the District Court. Shortly after the Supreme Court opinion in Reeves was issued, the Fifth Circuit Court withdrew its original opinion and later rendered a new opinion reversing explicitly in light of Reeves. According to the Court of Appeals, the District Court had applied a "now-disallowed" legal standard: "The Supreme Court in Reeves emphasized the importance of jury fact finding that evidence of the prima facie case plus pretext may, and **usually does**, establish sufficient evidence for a jury to find discrimination." In Bishop, the pretextual money-saving rationale did not address why Villareal was chosen over Evans; the qualification rationale was under minded by the mayor's own admissions that qualifications were not his main priority, and that he did not compare Evan's and Villareal's qualification. As in the Bishop case, there is an insufficient evidentiary basis to grant a summary judgment for the Defendant.

**Retaliation**

Title VII prohibits retaliation by employers because someone resisted discrimination. Section 704(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title. 42 U.S.C. §2000e-3(8) (1982).

Two distinct types of protected conduct are recognized by Section 704(a). The "opposition" clause prohibits retaliation for "oppos[ing] any practice made an unlawful employment practice . . . .." Second, the "free participation" clause bars retaliation "because an employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing . . . .." Clearly the failure to promote the Plaintiff constitutes an adverse employment action.

The victim of retaliation has the burden of proving that the adverse employment action was caused by the employer's intent to retaliate. In other words, if the employer treated the plaintiff differently because he was engaged in "opposition" or "participation" *protected* activity, intent would be shown. Most Section 704 cases involved one or more of the following questions: (1) whether the plaintiff's activities constitute participation or opposition; (2) whether the plaintiff's conduct removes it from the protection of the statute; and (3) whether the employer's response constitutes retaliation. All of these elements are present in this case.

The Plaintiff maintains the burden of persuasion that the employer's adverse action was based on retaliatory reasons. Based on *McDonnell Douglas / Burdine / Hicks* principles, a retaliation claim based on an allegation of "false motives" may be proved by circumstantial evidence. Those cases raising allegations of "mixed motives" follow *Price Waterhouse v. Hopkins*, and the Civil Rights Act of 1991 modification. The Plaintiff makes out a prima facie case by establishing three elements:

(1) the employee engaged in protected conduct involving "opposition" or "participation";
(2) the employer's action had an adverse effect on the employee; and
(3) the employer acted because of the employee's protected conduct. Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992)

Evidence of all of these criteria is presented by the Plaintiff's evidence.

A worker engages in protected activity if he "explicitly or implicitly communicates to his employer . . . a belief that its activity constitutes a form or employment discrimination." Such protested activity would include:

a. Threatening to file a charge or other formal complaint alleging discrimination;

b. Complaining to anyone (including a union official, coworker, attorney or newspaper reporter) about alleged discrimination, and even nonverbal acts (such as picketing or engaging in a production slowdown);

c. Refusing to obey an order based on a reasonable belief that it is discriminatory; and

d. Requesting accommodation of a disability or religious belief.

Attempting to resolve a split in the circuits, the E.E.O.C. Guidelines address whether the

individual claiming retaliation must have personally opposed discrimination. They provide that retaliation is prohibited "against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights." Both the individual who engage in protected activity and the relative, where both are employees can challenge retaliation against a close relative of an individual who opposed retaliation thus. EEOC Guidance on Investigating. Analyzing Retaliation Claims, EEOC Compliance Manual, Volume 2, Section 8 (May 20, 1998).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff's counsel prays that Defendant's Motion for Summary Judgment be in all things denied.

Respectfully submitted,

*[signature]*

Douglas R. Larson
State Bar No. 11958000
THE LAW OFFICE OF DOUGLAS R. LARSON
410 W. Main Street, Suite 101
Mesquite, Texas 75149
Telephone:    (972) 329-0160
Telefax:    (972) 329-6150
Email:    douglarson@mesquiteatty.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed in accordance with the Federal Rules of Civil Procedure to Mr. Jason D. McClain, Assistant City Attorney, 7BN Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75202, on this 13 day of February, 2006.

*[signature]*

Douglas R. Larson